The next case is number 05-1482, Cummins Incorporated against the United States. Mr. Friedman. Thank you, Your Honors, and good morning. As the Court is aware, and may it please the Court, the issue here is whether diesel engine crankshafts from Mexico are entitled to duty-free entry under the North American Free Trade Agreement. The underlying dispute is whether roughly forged materials used in the production process are classifiable under the HTS in Heading 7224. Regarding that underlying classification dispute, there are two fundamental issues for the Court to decide. First, did the Court of International Trade err by failing to classify the rough forgings in 7224 by the application of General Rule of Interpretation 1? And second, did the Court of International Trade improperly strive to conform its decision to a ruling of the Nomenclature Committee of the World Customs Organization? We believe the answer to both these questions is affirmative. Regarding the first issue, in all classification cases, the General Rules of Interpretation must be applied in order until a classification is determined. Once a product is classified under a proceeding, under a GRI, the subsequent rules need not and may not be applied. The first GRI requires that goods be classified based on the language of the heading, the relevant section, and chapter notes in the tariff schedule. It would help if you went directly to where the error was in the classification. The error here is that Judge Pogue below relied upon General Rule of Interpretation 2 for the definition of blanks and what Judge Pogue called a default rule that semi-finished articles of iron or steel are to be classified as a finished product. He did that at page 1373 of the reported opinion just after footnote 17. It seems like the judge said that there were indeed 13 processes that occur after you leave Brazil, but those 13 are just finishing. They're not further working. So in fact, it was roughly shaped by forging when it left Brazil. Maybe you could address that. Why isn't all this factual, by the way? And so we're kind of bound by the factual findings, not only of the CIT but of the WCO and Mexican processes as well. They all seem to have found it the same way. Well, taking the first part of your question, Your Honor, it is entirely unclear to me whether the court below made a factual determination as to whether these articles were roughly shaped by forging at the time they left Brazil. What the court determined, by and large, was two things. First that these forgings at the time they leave Brazil are blanks. And because they are not blanks for angle shapes and sections, then general rule of interpretation 2A indicates that they be classified as the finished article. That's a legal determination that the court made. Well, but the trial court did note that there were several processes that occur in Brazil. The alloy steel is forged, it's trimmed, it's then coined into a separate machine to straighten it, and then the crankshafts are sent to Brazil for further processing. Right. And to the extent that the court found those to be Why isn't that a finding that it was roughly shaped by forging? I believe that that issue went to whether it had been further worked. We're talking about findings of fact. This is a motion for summary judgment. That's correct. But there aren't any findings of fact in the motion for summary judgment, are there? Well, there are undisputed facts that are undisputed that the judge relied upon. That's correct. And we are arguing that the error below was not a factual error as to whether the products had been further worked or roughly shaped. But by and large, the argument we're making is that the court incorrectly applied the general rules of interpretation to get there. Did work based upon our statements of facts, our agreed statement of facts, and I do believe that there is no dispute as to the facts, as to what happened. So tell us how it should have been classified and very briefly why. Sure. Under general rule of interpretation one, there are a number of tests that are applicable to classification of merchandise under 7224. Products must have a solid section, they must not have been further worked, and they must have been roughly shaped by forging. Are you telling us the error was when it left Brazil or when it left Mexico? It is in its condition upon leaving Brazil and entering Mexico that we're worried about the classification. On entry into Mexico, U.S. Customs Border Protection determined the correct classification to be as the finished crankshaft. We contend that it's in 7224 as a semi-finished article of iron or steel. Again, applying GRI 1, there are three tests, solid section, not having been further worked, and only roughly shaped by forging, and also it must just meet the standard English definition of semi-finished, meaning partially finished, which is what we have here, partially finished diesel engine crankshaft. There's been no dispute as to the fact that the forging is a solid section. With respect to whether something is roughly shaped, the explanatory notes describe that as something of rough appearance, large dimensional tolerances, crude recognizable shapes, and requiring considerable further shaping. Facts are very clear that there is considerable further shaping on lathes or mills in Mexico, that the shape has changed significantly to remove certain angles, to add certain angles, to square corners throughout the bearing surfaces, and that the rough appearance of the preliminary forging are machined in some cases on the bearing surfaces to a mirror-like smooth bearing surface. So we fit within the definition of solid section, roughly shaped by forging. That leaves the question of whether the goods were further worked. The government has contended that operations that occur in the forging process, including trimming, coining, and certain milling operations, are in fact further working. We contend in our briefs, and I can go into it if you like, that those are in fact integral parts of the forging operation itself. Most of that occurs while the material remains hot and malleable, or it's a... You're right that all of that is in the briefs. I think we've read those briefs. So we can... I have one question for you. You make a point about the WCO's determinations, and that the... Are you not saying that this judge deferred to them rather than making a decision under American law? I am saying that the judge clearly sought to conform its decision to the decision of the WCO. It said that the court below found that there was an interest in harmonizing the decisions of the court to the WCO. However, the WCO ruling itself has a number of flaws in it, which the plaintiff, Cummins Incorporated, was not able to address in any way. It's a wholly collateral, wholly ex parte proceeding. The court even acknowledged near footnote 18 that all the facts may not have been presented to the WCO. What did the WCO ruling have to do with his decision? I mean, if he didn't apply it or in some way use it, it's irrelevant. If he did, then it probably is a big mistake. He did, in fact... I read what he said. He just sort of seemed to be saying, well, this I've decided under the American law and happily it conforms with the WCO. Does that mean that he would have decided it differently if it hadn't? We believe he would have, Your Honor. Clearly in the first, approximately third of the opinion, he discusses the importance of conforming the harmonizing decisions on classification. So that's an underlying basis for his decision. Then the court should keep in mind that this is the second time that this issue has been brought to the Court of International Trade. The first case, Cummins 1, the judge's analysis was completely different. It focused upon general rule of interpretation one, questions about whether the finished product was a blank or not. But the conclusion that was reached was that one machining operation, the machining of further working in Brazil and therefore is excluded. Cummins changed its process, no longer does that in Brazil, now does that process in Mexico. The WCO ruling was issued and a wholly different analysis results in Cummins 2. And that analysis strives for conformity. The judge says expressly, he strives for conformity with the ruling of the WCO in order to keep harmonization at the forefront. Is it the same judge in both cases? Yes, it is. It is. In addition, I already mentioned some of the issues with the WCO. It's important to keep in mind the WCO can only rule on the international parts of the tariff schedule. One of the key issues in this case is the application of additional United States note 2 in Chapter 72. That note could not have been before the WCO. We have a different legal basis on which we're, at least a different legal context in which we're pursuing the claim than was before the WCO. The forgings as they leave Brazil for Mexico are roughly shaped. All the facts that are in agreement indicate that. They must be substantially machined in Mexico. Therefore under GRI 1, these forgings can be classified in 7224. And as we said, we believe the court below erred in relying too heavily on the WCO ruling. I'll reserve the rest of my time. Okay. Thank you, Mr. Friedman. Ms. Williams. May it please the court. I will just, I'll briefly address a couple of points raised by the court and by counsel. You asked whether there was a factual dispute in this case. I wish I could say yes because it makes it easier for me. But frankly, there really isn't. All parties agree the five processes that occurred on the product in Brazil and everybody agrees the 14 processes that occurred in Mexico. They're really not a dispute. What's in dispute is whether those five processes which occurred in Brazil after forging consists of further work. And that truly is a legal question because you have to interpret what the word further work means. I think, however, the trial court correctly interpreted what that term meant based on Winter Wolf and based on the explanatory notes. So while there's no factual dispute, there is a legal dispute which the trial court correctly determined. There's no law which says what further work is. How can that not be a question of fact? It may be ultimate fact based on evidentiary facts, but how can that be a matter of law as to what further work is? Whether putting in the grease slit is or is not further work is not a, there's no law either way? Well, I personally, my feeling is whether something which happens after you forge it rises to the level of further work as in the chapter note, I think has a question of law in it. It's probably, now that you point that out, a mixed question of fact and law because you do need something to occur to it after it's forged. But whether that can fulfill the legal note of being further worked has legal implications. And that's why you have to resort to Winter Wolf or frankly there's a series of cases which analyze under the old tariff, the TSUS tariff schedules of the United States, whether doing work to metal further works it beyond forging because the case, those issues came up under the TSUS and they've been litigated. And generally the courts found, similar to here, if you grind off a burr, that's considered further working. So yes, it certainly has factual implications, it also has legal implications. The other thing counsel raised was the WCO and how that affects the decision in this case. I think the decision is self-evident that the court does look at this WCO, however, it correctly analyzes the further worked issue based on U.S. domestic law. It only applies domestic law with regard to that issue and reaches the correct decision based on domestic law. I think the WCO is somewhat of a red herring here. The last point I'd like to discuss is the Cummins. How about his point that the case changed between the first and the second round and WCO pops up in this one? That is exactly what my last point was. Cummins 1 is interesting for a number of reasons. Number one, if you read the case carefully, the judge acknowledges only a couple of the processes which occurred in Mexico. The court there only mentions shot blasting, mass centering, and the grease pocket. The court does not look at coining, trimming, or milling. So the court's looking at different facts. So it probably isn't the WCO decision. It's probably that the facts were further developed in this case, which tells them there are many more processes going on in Brazil than the court originally thought. The second thing- But there's no dispute that the coining, for instance, was done in Brazil. You say more than was originally thought. I hadn't thought those proceedings as to what was done in Brazil were disputed. When you look at the Cummins 1 decision, the judge does not discuss coining, does not discuss trimming, does not discuss the milling. He only focuses on three of the processes. So while the manufacturer of this product in Brazil has not factually changed, the court's knowledge of what occurred apparently has changed. And it frankly changed because the parties explored the actual processing in Brazil much more in the second case. And we reached the agreed statement of facts because we had an opportunity to do the necessary discovery and give it to the judge. Here's exactly what happened to it. In the first case, the judge didn't have the benefit of the agreed statement of facts. He didn't know the full background. So while the facts haven't changed, what the judge is aware of did change. So that's why there seems to be somewhat of a difference. The second point with regard... Provide some guidance as to the question of law. How does one decide the law that 14 steps in Mexico and five steps in Brazil necessarily lead to the fact that there were... Nonetheless, there's no change in the classification? It frankly doesn't matter what happens in Mexico. That's kind of irrelevant here because the question is, does it come into Brazil something different... I mean, excuse me, come into Mexico something different than it leaves Mexico? I thought you just said it doesn't matter what happens in Mexico. Exactly. So let me... So everybody agrees it leaves Mexico as a crankshaft. That's not in dispute. What's in dispute is how does it enter Mexico? Does it enter it an unfinished crankshaft like the government and the trial court felt? Or does it enter Mexico as an unfinished good under 17224? That's the question. So the only thing that's important here is how does it enter Mexico? Because everybody admits the condition when it leaves. So that's why the only focus of the trial court and the parties has been what occurred to in Brazil so you can tell the day it enters Mexico, how is it properly classified? But how can you decide that the condition is the same unless you look at the 14 treatment steps that it's given in Mexico? Because that would lead you to how it exits Mexico. Those 14 steps in Mexico tell you what the product is when it leaves. And everybody admits when it leaves, it's a finished crankshaft ready to go into a truck. So everybody then is undisputed. The question is, does it go into Mexico as a finished crankshaft or an unfinished crankshaft? Or does it come into Mexico as a semi-finished good? You following? I mean, I don't know if I'm explaining this particularly well. Well, of course, the whole issue is how much, what happens to it in Mexico? Isn't that the entire issue insofar as the tariff classifications in determining whether the same or different since the statute is based on tariff classifications? And there may be a very broad tariff category so that the classification doesn't change despite extensive treatment. Or there may be some lines drawn in the statute which were not here drawn. There is no dispute, though, that work is done in Mexico such that it leaves as a crankshaft. That is undisputed. The entire issue in this case, though, is not how it leaves Mexico. The question is, did it undergo a tariff shift while it was in there? Which means you have to see how it went in and then you see how it went out. And if it went in as A, came out as B, you know what underwent a change. But if it came in as A, left as A, then there's no change. Here, everybody agrees it came in, I mean, it leaves Mexico as B. So the question is, did it come into Mexico as A or B? If it came in as B, then there's no tariff shift. The government would prevail, which the trial court found. If it comes in as A, there is a tariff shift. So you have to make the initial decision, how does it come into Mexico? And you say that there are no factual questions? There are no facts in dispute as to the work done in Brazil. So the question is, does that work done in Brazil so that it's not forging that it will enter Mexico as B already? So that's why the focus of this case has been on Brazil. And you're saying that in order to decide that, you don't pay any attention at all to what was done to it in Mexico. Right, and frankly, the plaintiff agrees. Their only point in raising Mexico is honestly to say, what we're doing in Mexico is so significant to this. That it sort of renders what we did in Brazil as minor or incidental. They're using it as sort of a comparison to the huge amount of things they do. And Mexico means we're just barely doing anything in Brazil. I don't think they argued that. I think that that's what their argument boils down to. But I'm sure counsel will clarify if I'm wrong. Because plaintiff does agree with the government that the focus of this case is whether the product was or was not further worked in Brazil. And that's really what their whole argument is. They're saying what was done there was so insignificant or incidental or so part of forging or the forging process that it doesn't really count. So that the plaintiff's argument that continues then, since it's so insignificant in Brazil, when it comes to Mexico, it's a semi-finished product. It's not an unfinished crankshaft. The only other thing I wanted to point out was regarding the Cummins 1 case, which you asked about earlier. If you read the case, not only did the trial court only focus on three things. He didn't have the benefit of everything that actually happened to the product. His decision says that a grease pocket, which was milled into the product in Brazil at that time, that was certainly further worked in Brazil, so it excluded it. The court really didn't base its decision or truly have to weigh whether the other four processes, which occurred in Brazil, made this product further worked. So while the Cummins 1 certainly gives you direction on the grease pocket, it really doesn't clarify the other processes. And it's certainly, because the decision changed between Cummins 1 and Cummins 2, I think it's not a correct conclusion to reach that the WCO decision is the thing that's different. What's really different is the trial court had a much better understanding of what the product is and what the processes in Brazil were. And I think that's much more accurate as to the reason that Cummins 1 appears in some part to differ from Cummins 2. If there are any more questions? So you would agree if he based his decision on the WCO rules that it would be wrong? If he was governed by then in that he said, what did the WTO do? I'll follow that. But certainly, there's nothing wrong with a trial court looking at the domestic law, making their decision on the domestic law, and then as you said, Judge Meyer, saying, well, happily, it agrees with what the WCO does. That's not only not bad, that's good, because we do want to be in harmony with the rest of the world. And frankly, I think that's what occurred here. Thank you. Thank you, Ms. Williams. Mr. Friedman? Thank you. If I may respond to Judge Newman's question, Mexico matters. Mexico does matter for several reasons. Your first question to the government was whether there was law defining further working. There is. There's additional note 2 to Chapter 72, which lists quite specifically 13 types of surface treatments. The government and the court relied upon a decision in a case called Winter Wolf, which is, in fact, inapplicable to this case. It raises an issue in a different chapter of tariff schedule that does not have a note defining further work. It's not a relevant decision. Similarly, the TUSIS cases, the tariff schedule of the U.S. cases, do not have a similar note and are not relevant. The important question about what happens in Mexico, or the importance of what happens in Mexico, is that it helps us define further working, because the explanatory notes equate further working with being ready for final machining. And you can only tell whether something is ready for final machining by looking at what machining occurs to it, and that happens predominantly in Mexico. If the court looks at the appendix at page 117, you'll see the flow chart of the processing in Mexico, and it is not until page 5 of the flow chart that finished machining begins. All of the machining preceding finished machining, in this case actually semi-finished machining, means that the article, as it entered Mexico, was not ready for final machining. So what happens in Mexico is indeed indicative of whether the article was roughly shaped by forging and not further work. It does, therefore, matter. Okay, unless there are questions, I'm good. Thank you. Thank you, Mr. Friedman. Ms. Williams?